07-3356-cv
Brown v. Kelly

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2008

(Argued:  December 19, 2008          Decided: June 24, 2010)

Docket No. 07-3356-cv

_____

MICHAEL BROWN, on behalf of himself and others similarly situated,

Plaintiff-Appellee,

– v –

POLICE COMMISSIONER RAYMOND W. KELLY, as commissioner of the New York City Police Department (NYPD), BARRY M. BUZZETTI, Captain and Commanding Officer of NYPD 48th Precinct, JOHN & JANE DOES, police officers, CITY OF NEW YORK, MICHAEL CURLEY, COREY HARRIS, MIGUEL MUSSE, KEVIN LYNCH, JOHN BRENNAN, SHAWN RICKER, and ROBERT JOHNSON JR., District Attorney of Bronx County,

Defendants-Appellants.[*]

_____

Before:  SACK and KATZMANN, Circuit Judges.[**]

Defendants-appellants appeal from a July 24, 2007, order of the United States District Court for the Southern District of New York (Shira A. Scheindlin, Judge) granting plaintiff-appellee Michael Brown's motion for class

---

[*]  The Clerk of the Court is respectfully directed to amend the official caption to appear as set forth in this opinion.

[**]  The Honorable Sonia Sotomayor, originally a member of the panel, was appointed to the Supreme Court on August 8, 2009.  The two remaining members of the panel, who are in agreement, have determined the matter.  See 28 U.S.C. § 46(d); IOP E(b); United States v. Desimone, 140 F.3d 457, 458-59 (2d Cir. 1998).

certification.  We conclude that the district court erred in certifying a statewide defendant class because the defendant class representatives do not meet the adequacy and typicality requirements of Federal Rule of Civil Procedure 23(a), and that the district court also erred in certifying a statewide plaintiff class because the certification of this class was contingent on the bilateral certification of both a statewide plaintiff and a statewide defendant class.  We affirm, however, the district court's certification of a citywide plaintiff class pursuant to Federal Rule of Civil Procedure 23(b)(3), because the citywide plaintiff class does meet the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3).  Accordingly, we vacate the portion of the district court's order certifying the Rule 23(b)(2) statewide plaintiff and defendant classes and remand to the district court for further proceedings.

FAY NG (Pamela Seider Dolgow, Rachel Seligman, Linda Donahue, on the brief), for Michael A. Cardozo, Corporation Counsel of the City of New York, New York, NY, for Defendants-Appellants.

MATTHEW D. BRINCKERHOFF, Emery Celli Brinckerhoff & Abady LLP, New York, NY (Katherine R. Rosenfeld, Emery Celli Brinckerhoff & Abady LLP, New York, NY, J. McGregor Smyth, Jr., The Bronx Defenders, Bronx, NY, on the brief), for Plaintiff-Appellee.

MONICA WAGNER (Barbara D. Underwood, Benjamin N. Gutman, on the brief), for Andrew M. Cuomo, Attorney General of the State of New York, for Amicus Curiae State of New York, in support of Defendants-Appellants.

Anthony J. Servino, Steven A. Bender, for James A. Murphy III, District Attorney of Saratoga County, New York (on submission), for Amicus Curiae New York State District Attorneys Association, in support of Defendants-Appellants.

Dennis J. Saffran, for Lorna B. Goodman, County Attorney of Nassau County, New York (on submission), for Amicus Curiae Nassau County, in support of Defendants-Appellants.

Christopher A. Jeffreys, for Christine Malafi, County Attorney of Suffolk County, New York (on submission), for Amicus Curiae Suffolk County, in support of Defendants-Appellants.

Max Minzer, Benjamin Cardozo School of Law, New York, NY, Kenneth E. Aldous, Proskauer Rose LLP, New York, NY (on submission), for Amici Curiae Law Professors who Study Federal Civil Procedure and Class Actions, in support of Plaintiff-Appellee.

William M. Brooks, Touro College, Central Islip, NY, for Amicus Curiae Mental Disability Law Clinic, in support of Plaintiff-Appellee.

SACK, Circuit Judge:

3

Defendants-appellants appeal from a July 24, 2007, order of the United States District Court for the Southern District of New York (Shira A. Scheindlin, Judge) granting plaintiff-appellee Michael Brown's motion (1) to certify a New York City-wide plaintiff class (the "City Plaintiff Class") for damages pursuant to Federal Rule of Civil Procedure 23(b)(3), consisting of persons who have been or will be arrested, summonsed, or prosecuted under New York Penal Law § 240.35(1), a New York State statute previously declared unconstitutional by this Court; (2) to certify a statewide plaintiff class (the "State Plaintiff Class") for injunctive relief pursuant to Federal Rule of Civil Procedure 23(b)(2), also consisting of individuals against whom this statute has been or will be enforced; and (3) to certify a statewide defendant class (the "State Defendant Class") pursuant to Federal Rule of Civil Procedure 23(b)(2), consisting of all New York State political subdivisions and law enforcement and prosecutorial policy-making officials with authority to arrest, charge or prosecute under this statute. The defendants argue both that certification of defendant classes is not ordinarily permitted under Rule 23(b)(2) and, particularly, that none of the certified classes in this action meet the requirements of Rule 23.

We decline to revisit our holding in Marcera v. Chinlund, 595 F.2d 1231 (2d Cir.), vacated on other grounds sub

4

nom. Lombard v. Marcera, 442 U.S. 915 (1979), that Rule 23(b)(2) permits certification of a defendant class where a plaintiff seeks "injunctive relief against a class of local public officials," 595 F.2d at 1238, even though, the judgment having been vacated, the decision in Marcera is not binding on us. With respect to whether class certification was appropriate under Rule 23, we conclude that the district court abused its discretion in certifying the State Plaintiff and Defendant Classes under Rule 23(b)(2), but we affirm the district court's certification of the City Plaintiff Class pursuant to Rule 23(b)(3). Accordingly, we vacate the portion of the district court's order certifying the Rule 23(b)(2) State Plaintiff and Defendant Classes and remand to the district court for further proceedings.

**BACKGROUND**

<u>Allegations</u>

Plaintiff Michael Brown brings this putative class action against New York City Police Commissioner Raymond W. Kelly, the City of New York, the Bronx County District Attorney, individual New York City police officers and supervisors, and individual District Attorney's Office personnel in New York City (the "City Defendants"), and a putative defendant class of statewide political subdivisions and law enforcement and prosecutorial personnel -- the State Defendant Class -- alleging that the defendants have unlawfully continued to arrest, summons,

and prosecute individuals such as Brown pursuant to New York Penal Law § 240.35(1), a statute that was declared unconstitutional by this Court in 1993. See Loper v. N.Y. City Police Dep't, 999 F.2d 699, 705-06 (2d Cir. 1993).[1]

New York Penal Law § 240.35(1) addresses loitering for the purpose of begging, and provides that a person is guilty of "loitering when he . . . [l]oiters, remains or wanders about in a public place for the purpose of begging." N.Y. Penal Law § 240.35(1). In Loper, we held that section 240.35(1) violates the First Amendment and therefore affirmed a district court order permanently enjoining the City of New York from enforcing the statute. See 999 F.2d at 706. Brown alleges that he was nonetheless arrested and prosecuted under section 240.35(1) in 2003 and that section 240.35(1) has continued to be enforced both within New York City and elsewhere throughout New York State after, and despite, this Court's decision in Loper. He therefore asserts claims of: (1) false arrest, false imprisonment, and

---

[1] We note that, on June 10, 2010, during the pendency of this appeal, the Appellate Term of the New York State Supreme Court for the 9th and 10th Judicial Districts, a state intermediate appellate court, held, in conformity with our decision in Loper, that New York Penal Law § 240.35(1) is unconstitutional. See People v. Hoffstead, --- N.Y.S.2d ---, 2010 WL 2331432, at *2, 2010 N.Y. Misc. LEXIS 1572, at *3 (N.Y. Sup. App. Term June 10, 2010) ("We agree that Penal Law § 240.35(1) is unconstitutional because it violates the freedom-of-speech guarantee of the First Amendment."). This development does not, however, affect our resolution of this appeal.

malicious prosecution in violation of the Fourth and Fourteenth Amendments; (2) inhibition of class members' free speech activities in violation of the First and Fourteenth Amendments; (3) violation of class members' due process rights under the Fourteenth Amendment; and (4) violation of the Equal Protection Clause of the Fourteenth Amendment. The Complaint seeks injunctive relief against the State Defendant Class, including an order directing the members of the State Defendant Class to cease enforcement of the statute and an order mandating various remedial measures including training, the establishment of an arrest tracking system, disgorgement of fines, expungement of convictions, vacating of warrants, and the issuance of new policies. It also seeks a declaratory judgment that the State Defendant Class has committed the violations of law alleged in this action. Finally, the Complaint seeks damages against the named City Defendants on behalf of the City Plaintiff Class.

Litigation History

On June 9, 2005, former plaintiff Eddie Wise instituted this action by obtaining an order to show cause and temporary restraining order against the New York City and State defendants for unlawfully enforcing section 240.35(1). On multiple occasions from 2002 through June 2005, uniformed police officers allegedly wrongfully arrested Wise for begging peacefully on the streets of the Bronx. Wise was charged with loitering in

7

violation of section 240.35(1) and prosecuted for this offense by the Bronx County District Attorney's Office.

Soon thereafter, the City Defendants entered into a stipulation in which they agreed to take steps aimed at preventing future enforcement of the statute. The district court "so ordered" that stipulation on June 23, 2005. Pursuant to the order, the City Defendants were to notify various City law-enforcement officials and employees that section 240.35(1) had been declared unconstitutional, which they did. The order further provided that the City and its employees "shall cease enforcement of [section 240.35(1)]."

In January 2006, Wise settled his claims with the New York State defendants, including the Office of Court Administration ("OCA").[2] The City Defendants were left as the only remaining defendants in that action.

On November 22, 2006, Wise accepted the City Defendants' Offer of Judgment pursuant to Federal Rule of Civil Procedure 68, subsequent to which a judgment was entered dismissing all of his claims. Prior to this dismissal, Wise had requested and received leave to amend his complaint to add Brown as a plaintiff and plaintiff class representative. Accordingly, although Wise was dismissed from the litigation as a plaintiff,

[2] Pursuant to that settlement, OCA was subpoenaed to produce information contained in its electronic data system, which tracks and stores summonses issued under section 240.35(1).

the class action was permitted to continue with Brown as the lead plaintiff and class representative.

In March 2007, Brown, now the class representative, moved to hold the City Defendants in contempt for their alleged failure to comply with the district court's June 2005 order to cease enforcement of section 240.35(1).  In an order dated May 31, 2007, the district court denied the motion, citing improvements in the City's compliance subsequent to December 2006 and concluding that holding the City in contempt would not "have the desired effect of halting the issuance of further summonses by patrolling officers."  Brown v. Kelly, No. 05 Civ. 5442, 2007 WL 1573957, at *5, 2007 U.S. Dist. LEXIS 39527, at *23 (S.D.N.Y. May 31, 2007).  The district court found, however, that "notwithstanding an Order of this Court dated June 23, 2005, which directed defendants once and for all to cease enforcing the statute, enforcement continues to this day."  Id., 2007 WL 1573957, at *1, 2007 U.S. Dist. LEXIS 39527, at *2.[3]

---

[3] Recently, however, in response to a renewed motion filed by the plaintiffs during the pendency of this appeal, the district court issued an order on April 26, 2010, holding the City of New York to be in contempt of court for failing to act with reasonable diligence to eliminate enforcement of section 240.35(1) and two related loitering provisions in the Penal Code that have been ruled unconstitutional, sections 240.35(3) and 240.35(7), after being ordered by the court on June 23, 2005 and May 2, 2008 to do so.  See Casale v. Kelly, --- F. Supp. 2d ---, Nos. 08 Civ. 2173, 05 Civ. 5442, 2010 WL 1685582, at *12, 2010 U.S. Dist. LEXIS 40606, at *54 (S.D.N.Y. Apr. 26, 2010).

Despite the various measures undertaken by the City,

Earlier, on February 2, 2007, Brown had moved for class certification and for leave to amend the Complaint.  He sought to have the following classes certified: (1) a Rule 23(b)(2) plaintiff class consisting of all persons who have been or will be arrested, charged or prosecuted for violating section 240.35(1) in the State of New York from October 7, 1992[4] onward; (2) a Rule 23(b)(3) plaintiff subclass of all persons who have been or will be arrested, charged or prosecuted by employees, agents or representatives of New York City for violating section 240.35(1) from October 7, 1992 onward; and (3) a Rule 23(b)(2)

pursuant to the court's direction, to eliminate enforcement of these unconstitutional provisions, the court found that enforcement has continued to an unacceptable degree more than 18 years since section 240.35(1) was invalidated and that "the City has done little on its own initiative or with reasonable conviction and speed to end the illegal enforcement."  Id., 2010 WL 1685582, at *1, 2010 U.S. Dist. LEXIS 40606, at *1-*2. Indeed, since the court's denial of the plaintiffs' previous motion for contempt in June 2007, the City has issued upwards of 110 unlawful citations under section 240.35(1).  Id., 2010 WL 1685582, at *6, 2010 U.S. Dist. LEXIS 40606, at *27.  After declining to impose sanctions in the past, the court found the City's continued "obstinance and uncooperativeness" to be "offensive to the rule of law" and, in light of the fact that the City "has proven itself to only act responsibly and energetically when threatened with sanctions," concluded that "the time for promises, excuses, and judicial forbearance is over."  Id., 2010 WL 1685582, at *1, 2010 U.S. Dist. LEXIS 40606, at *2-*4.

[4] In Loper, we affirmed the decision of the district court in Loper v. N.Y. City Police Dep't, 802 F. Supp. 1029, 1048 (S.D.N.Y. 1992), declaring N.Y. Penal Law § 240.35(1) unconstitutional and enjoining its enforcement.  See Loper, 999 F.2d at 706.  The district court's decision was entered on September 30, 1992, and the resulting injunction issued on October 7, 1992.

defendant class of "all political sub-divisions and all law enforcement/prosecutorial policy-making officials in the State of New York with authority to arrest, charge or prosecute a person with a violation under New York Penal Law." The corresponding proposed amended complaint sought preliminary and permanent injunctive relief against all defendant class members, compensatory damages against all the named City Defendants, and punitive damages against all named City Defendants except the City of New York.

The State and City Plaintiff Classes were to be represented by Brown and six other plaintiffs who were added to the proposed amended complaint. These class representatives were all either issued summons or arrested and charged under section 240.35(1) in the Bronx or Manhattan. The State Defendant Class was to be represented by the City of New York, New York City Police Commissioner Raymond Kelly, and Bronx County District Attorney Robert Johnson (the "Defendant Class Representatives"). In support of certification, Brown pointed to uncontested evidence that from January 2, 2007, through March 14, 2007, members of the New York City Police Department issued section 240.35(1) summonses at an average rate of one every other day. Brown also cited OCA data reflecting the fact that since 1992 there had been at least 673 criminal prosecutions by district attorney's offices charging violations of

11

section 240.35(1) in Rockland, Suffolk, Erie, and Nassau Counties.

On July 24, 2007, the district court granted Brown's motion in its entirety. Brown v. Kelly, 244 F.R.D. 222, 225 (S.D.N.Y. 2007). The court found, inter alia, that the State and City Plaintiff Classes met the commonality and typicality requirements of Rule 23(a)[5] because their injuries all "derive from a unitary course of conduct by a single system": an arrest and prosecution policy throughout New York State pursuant to section 240.35(1), which "chilled" their speech and facilitated the unlawful enforcement of an unconstitutional statute. Id. at 231-32 (internal quotation marks omitted). The court also found that the plaintiffs "easily satisfy the numerosity requirement" of Rule 23(a), id. at 229, and that the adequacy requirement was

_____

[5] Rule 23(a) provides:

(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

12

met because "the named plaintiffs' motives for pursuing this litigation are commensurate with those of all proposed class members," id. at 234.

The district court concluded that certification of the State Plaintiff Class was warranted pursuant to Rule 23(b)(2)[6]

---

[6] Rule 23(b) provides:

(b) Types of Class Actions.  A class action may be maintained if Rule 23(a) is satisfied and if:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in

because "law enforcement agencies throughout New York State, including New York City, continued charging individuals with violating section 240.35(1) after it was declared unconstitutional" and "the class action device is the most efficient and appropriate method for vindicating the rights of individuals throughout New York who were subject to an unlawful section 240.35(1) charge." Id. at 237.  It also approved certification of the City Plaintiff Class pursuant to Rule 23(b)(3), concluding that the common liability issues were "so pronounced and pervasive [that] they overwhelmingly outweigh the more narrow inquiries that may be required to resolve a subset" of claims.  Id. at 238.  The court concluded that in light of the demographics of the proposed subclass, the class action device was not only superior to alternative methods of adjudication, but was the "only method of adjudication."  Id. (internal quotation marks omitted, emphasis in original).  The court noted that

individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

14

certification would permit many class members who did not possess the resources to bring individual actions to vindicate their rights in unison and would avoid the burden and expense of duplicative lawsuits. Id. at 238-39.

With respect to the proposed State Defendant Class, the district court concluded, inter alia, that in light of the fact that section 240.35(1) has been held to be unconstitutional, the "simple fact that [it] remains on the books and subject to state-wide enforcement provides the requisite commonality." Id. at 240. The court found typicality and adequacy based on the fact that all of the members of the State Defendant Class "are officials of a single state and are charged with enforcing or uniformly acting in accordance with a state statute, or common rule or practice of state-wide application, which is alleged to be unconstitutional." Id. (quotation marks and citation omitted). The court decided that certification under Rule 23(b)(2) was appropriate because, inter alia, incidents of unlawful enforcement have occurred statewide, rendering injunctive relief appropriate. Id. at 243.

On August 3, 2007, the City Defendants filed a timely petition pursuant to Rule 23(f) for leave to appeal to this Court the district court's order granting the motion for class certification. By order dated November 7, 2007, we granted the petition.

15

**DISCUSSION**

I.  Standard of Review

A district court's certification of a class under Rule 23 is reviewed for abuse of discretion, provided that, as here, the court applied the proper legal standards.  In re Initial Pub. Offering Sec. Litig., 471 F.3d 24, 31–32 (2d Cir. 2006) ("In re IPO").  This abuse-of-discretion standard applies both to the district court's ultimate decision on class certification and to its rulings as to the individual Rule 23 requirements.  Id.  To the extent that the district court's ruling on an individual Rule 23 requirement is supported by a finding of fact, that finding is reviewed under the "clearly erroneous" standard.  Id. at 40-41.  To the extent such a ruling involves an issue of law, we review it de novo.  Id. at 41.

II.  Standards for Class Certification

Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure.  To be certified, a putative class must first meet all four prerequisites set forth in Rule 23(a): numerosity, commonality, typicality, and adequacy.  Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 201–02 (2d Cir. 2008) ("Teamsters").  The numerosity requirement provides that the class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The commonality requirement is met if there is

16

a common question of law or fact shared by the class. Fed. R. Civ. P. 23(a)(2); see also Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997). Typicality requires that the claims or defenses of the class representatives be typical of the claims or defenses of the class members. See Fed. R. Civ. P. 23(a)(3). This requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Marisol A., 126 F.3d at 376 (internal quotation marks omitted). The commonality and typicality requirements often "tend to merge into one another, so that similar considerations animate analysis" of both. Id. The adequacy requirement is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

Not only must each of the requirements set forth in Rule 23(a) be met, but certification of the class must also be deemed appropriate under one of the three subdivisions of Rule 23(b). The district court granted certification to the State Plaintiff and Defendant Classes under Rule 23(b)(2), and to the City Plaintiff Class under Rule 23(b)(3).

Under Rule 23(b)(2), class certification is appropriate if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final

17

injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

Under Rule 23(b)(3), class certification is appropriate if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class litigation is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "As a general matter, the Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  In re Nassau County Strip Search Cases, 461 F.3d 219, 225 (2d Cir. 2006) (internal quotation marks omitted).

> The matters pertinent to these findings include:
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

In evaluating a motion for class certification, the district court is required to make a "definitive assessment of

Rule 23 requirements, notwithstanding their overlap with merits issues," and must resolve material factual disputes relevant to each Rule 23 requirement. In re IPO, 471 F.3d at 41. The Rule 23 requirements must be established by at least a preponderance of the evidence. Teamsters, 546 F.3d at 202.

III. Applicability of Rule 23(b)(2)
to a Defendant Class

The City Defendants argue at the threshold that the district court erred in certifying a statewide defendant class because Rule 23(b)(2) does not authorize defendant classes. A panel of this Court resolved that question in Marcera v. Chinlund, 595 F.2d 1231 (2d Cir.), vacated on other grounds sub nom. Lombard v. Marcera, 442 U.S. 915 (1979). Relying on Lee v. Washington, 390 U.S. 333 (1968) (per curiam), we concluded that Rule 23(b)(2) is "an appropriate vehicle for injunctive relief against a class of local public officials." Marcera, 595 F.2d at 1238. The City Defendants conceded during oral argument before us that a three-judge panel of this Court should not revisit Marcera's holding. We agree.

Because the Supreme Court vacated our decision in Marcera, it is not technically binding on us. See O'Connor v. Donaldson, 422 U.S. 563, 577 n.12 (1975) ("Of necessity our decision vacating the judgment of the Court of Appeals deprives that court's opinion of precedential effect, leaving this Court's opinion and judgment as the sole law of the case."); Russman v.

19

*Bd. of Educ. of the Enlarged City Sch. Dist. of the City of Watervliet*, 260 F.3d 114, 122 n.2 (2d Cir. 2001) (noting in dicta that "[w]hen imposed by the Supreme Court, vacatur eliminates an appellate precedent that would otherwise control decision on a contested question throughout the circuit"); *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1424 n.2 (9th Cir. 1991) ("A decision may be <u>reversed</u> on other grounds, but a decision that has been <u>vacated</u> has no precedential authority whatsoever.") (emphasis in original).  We nonetheless treat <u>Marcera</u> as persuasive authority.

<u>Marcera</u> addressed a difficult question of statutory interpretation.  Under Rule 23(b)(2), "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . the party <u>opposing the class</u> has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2) (emphasis added).[7]  The circuits are divided as to whether and under what circumstances this provision permits the certification of a

---

[7] Although this case was filed in 2005, this text reflects the December 2007 amendments to Rule 23(b)(2), which were intended to be stylistic only.  See Fed. R. Civ. P. 23(b)(3) adv. comm. n. to 2007 amend.

defendant class.[8]  The Supreme Court has not offered guidance on the matter.

The question whether defendant classes can be certified under Rule 23(b)(2), and if so under what circumstances, does not admit of an easy answer.  On the one hand, there is a strong textual argument that Rule 23(b)(2) does not countenance

---

[8]  The Seventh Circuit has concluded that Rule 23(b)(2) does not permit the certification of defendant classes. See Henson v. E. Lincoln Twp., 814 F.2d 410, 415-17 (7th Cir. 1987).  The Fourth Circuit is of the view that while defendant classes are generally impermissible under Rule 23(b)(2), an exception exists, in relevant part, when there is a challenge to "a statewide [governmental] rule or practice so that relief is available if the rule or practice is invalid." Bazemore v. Friday, 751 F.2d 662, 669-70 (4th Cir. 1984) (interpreting Paxman v. Campbell, 612 F.2d 848 (4th Cir. 1980) (en banc), which had held that "[t]o proceed under 23(b)(2) against a class of defendants . . . would create the anomalous situation in which the plaintiffs' own actions or inactions could make injunctive relief against the defendants appropriate," id. at 854, to turn on the fact that it was "uncontradicted [in Paxman that] there was no statewide policy in force, centrally directed or otherwise"), aff'd in part, vacated in part on other grounds, 478 U.S. 385 (1986).  The Fifth Circuit has upheld the certification of a defendant class in a mass tort action under Rule 23(b)(2), although it noted in doing so that the parties had not challenged the propriety of such certification on appeal. In re Asbestos Litig., 90 F.3d 963, 991 n.20 (5th Cir. 1996), vacated on other grounds sub nom. Flanagan v. Ahearn, 521 U.S. 1114 (1997) (Mem.).

Other circuits have held that the certification of defendant classes is ordinarily not permitted under Rule 23(b)(2), but have explicitly declined to rule on whether Rule 23(b)(2) applies to suits for injunctive relief against a class of local pubic officials. See Tilley v. TJX Cos., Inc., 345 F.3d 34, 39-40 (1st Cir. 2003); Thompson v. Bd. of Educ. of Romeo Cmty. Schs., 709 F.2d 1200, 1203-04 (6th Cir. 1983); cf. Akron Ctr. for Reprod. Health v. Rosen, 110 F.R.D. 576, 583 (N.D. Ohio 1986) (interpreting Thompson to endorse certification, under Rule 23(b)(2), of a defendant class of officials who were required to enforce an allegedly unconstitutional statute).

21

defendant classes because in a defendant class action, the party opposing the class -- the plaintiffs -- would not be the party who has allegedly "acted or refused to act on grounds that apply generally to the class."  This argument is buttressed by the fact that the illustrative examples of Rule 23(b)(2) actions in the Advisory Committee Notes to Rule 23 include no cases involving defendant classes.  See Fed. R. Civ. P. 23 adv. comm. n. of decisions.

On the other hand, as a commentator has pointed out, Rule 23(b)(2) can be read consistently with the certification of a bilateral (plaintiff and defendant) class,[9] permitting certification when "the party [defendant or defendant class] opposing the [plaintiff] class has acted or refused to act on grounds that apply generally to the [plaintiff] class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  2 Newberg on Class Actions § 4:66 (4th ed. 2009).  This interpretation follows from Rule 23's general authorization of defendant classes, see Fed. R. Civ. P. 23(a) (stating that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members" (emphasis added)), and from Rule 23(b)(2)'s use of the phrase, "the party opposing the class," rather than language

---

[9]  We use the term "bilateral class" throughout this opinion to refer to the certification of both a plaintiff and a defendant class.

explicitly limiting this provision to plaintiff classes.  It also gains support from cases interpreting Rule 23 prior to the 1966 amendments that created Rule 23(b)(2) in its current form.[10]

In Lee, moreover, which we relied upon in Marcera, the Supreme Court affirmed a district court's certification of a bilateral class under the pre-1966 Rule 23, see 390 U.S. at 333, which, if considered for certification today, would most easily fit under Rule 23(b)(2):  "[T]he party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  As described in the district court opinion in Lee, the defendant class consisted of all county sheriffs and city and town wardens and jailers in the state of Alabama, and the action sought to enjoin the state's policy of segregating prisoners by race.  Washington v. Lee, 263 F. Supp. 327, 328-29 (M.D. Ala. 1966).  Because the Advisory Committee Notes to the 1966 amendments do not indicate an intention for the post-1966 rule to limit the types of classes that were held permissible under the pre-1966 rule, Lee provides support for

---

[10] We also note that "the party opposing the class" could refer to the party opposing class certification, rather than the party opposing the class in the litigation.  Under this reading, class certification is permissible when the party opposing class certification -- the defendants -- has acted or refused to act on grounds that apply generally to the defendant class.

interpreting Rule 23(b)(2) to permit the certification of defendant classes, at least in a bilateral class action seeking injunctive relief against a class of local public officials.[11]

Thus, we perceive strong arguments on both sides of the issue, particularly in the context of a bilateral class action challenging a governmental practice or policy. Marcera resolved the question by concluding that "although a literal reading of [Rule 23(b)(2)] might indicate otherwise, . . . it is now settled that 23(b)(2) is an appropriate vehicle for injunctive relief against a class of local public officials." 595 F.2d at 1238 (citing, inter alia, Lee, 390 U.S. 333). Although Marcera's analysis was limited, we conclude that it reflects a reasonable interpretation of Rule 23(b)(2). Marcera has been relied upon by lower courts in this Circuit for some thirty years. See, e.g.,

---

[11] The City Defendants argue that Lee is inapposite because it involved the certification of a "spurious class" under then-Rule 23(a)(3), which applied to actions seeking common relief but did not bind absent class members. See Fed. R. Civ. P. 23 adv. comm. n. to 1966 amend. We are not persuaded. Although the class was certified under then-Rule 23(a)(3), the relief granted did, in fact, serve to bind absent class members. See Washington v. Lee, 263 F. Supp. at 333–34 (ordering defendant class members to completely desegregate the town and city jails and furnish reports to the Commissioner of the Board of Corrections). And the Advisory Committee Notes to the 1966 amendments found that courts had not consistently followed the former Rule 23(a)'s distinctions, categorizing classes as spurious when "it would seem fitting for the judgments to extend to the class." Fed. R. Civ. P. 23 adv. comm. n. to 1966 amend. (citing, e.g., Knapp v. Bankers Sec. Corp., 17 F.R.D. 245 (E.D. Pa. 1954), aff'd, 230 F.2d 717 (3d Cir. 1956); Giesecke v. Denver Tramway Corp., 81 F. Supp. 957 (D. Del. 1949); York v. Guaranty Trust Co., 143 F.2d 503 (2d Cir. 1944), rev'd on other grounds, 326 U.S. 99 (1945)).

Mental Disability Law Clinic v. Hogan, No. 06 Civ. 6320, 2008 WL 4104460, at *23, 2008 U.S. Dist. LEXIS 70684, at *67-*68 (E.D.N.Y. Aug. 29, 2008); Monaco v. Stone, 187 F.R.D. 50, 64 (E.D.N.Y. 1999); DeAllaume v. Perales, 110 F.R.D. 299, 304 (S.D.N.Y. 1986); see also Marcera v. Chinlund, 91 F.R.D. 579, 583-84 (W.D.N.Y. 1981) (certifying a defendant class on remand after the Supreme Court vacated this Court's judgment in Marcera); cf. Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995) (citing Marcera for the proposition that the Rule 23(a) requirements apply equally to plaintiff and defendant classes).

We have no need to revisit, or to ask the Court to revisit en banc, Marcera's holding here. Inasmuch as we ultimately conclude that the State Defendant Class was, in any event, improperly certified here, we need not decide the vitality of Marcera in order to resolve this appeal. We have offered these observations nonetheless because, were we of a contrary view as to the governing law regarding defendant class certification, we might well have decided this appeal on that basis, in light of the vigor with which the issue of Marcera's continued viability was contested before us, and because it may be of some assistance to district courts that continue to rely upon its holding.

25

**IV.   Abuse of Discretion in Certifying
Rule 23(b)(2) Defendant Class**

Turning now to the merits of the district court's decision to certify a Rule 23(b)(2) State Defendant Class in the instant case, we conclude that certification was inappropriate because the Defendant Class Representatives do not meet the adequacy requirement of Rule 23(a) and there is insufficient evidence that they meet the typicality requirement.

**A. Adequacy**

In order for a class representative to meet the adequacy requirement of Rule 23(a), "the class members must not have interests that are antagonistic to one another."  In re Joint E. & S. Dist. Asbestos Litig., 78 F.3d 764, 778 (2d Cir. 1996) (internal quotation marks omitted).  The Defendant Class Representatives inadequately fill the role of class representatives because (1) the action involves a host of legal and factual issues unique to them that are likely to distract from their representation of the class, and (2) they possess weaker incentives to defend against the injunctive relief sought by the plaintiffs than do the remaining members of the State Defendant Class.

First, unlike the remainder of the State Defendant Class, the Defendant Class Representatives -- all of whom are affiliated with New York City and among the named City

Defendants -- are subject to claims for damages, including in some cases punitive damages, as well as injunctive relief. Such claims raise many issues that may well be central to their defense strategy, including whether New York City is liable for damages under Monell v. Dep't of Social Services, 436 U.S. 658 (1978), based on its alleged custom, policy and practice of unlawful enforcement of section 240.35(1); whether any city officials have qualified or absolute immunity or face possible liability for punitive damages; and whether New York City is collaterally estopped from contesting liability in light of its admissions as to instances of wrongful enforcement of section 240.35(1) in prior proceedings. These issues, in which the remainder of the State Defendant Class do not share an interest, risk dominating the class representatives' attention during litigation such that it will not be the case that by "defend[ing] [their] own interests [they] will also be protecting the interests of the class." Consol. Rail Corp., 47 F.3d at 483–84; cf. Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 59 (2d Cir. 2000) ("'While it is settled that the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification, class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.'" (quoting Gary Plastic

27

*Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990)).

Second, because New York City is already subject to existing court orders with respect to its continued enforcement of section 240.35(1), and has indeed recently been judged to be in contempt of court for violating them,[12] it would have little incentive to oppose or defend against injunctive relief that went no further than the injunctions presently in place. Its interests are thus in tension with those of the remaining class members, against whom there are, to the best of our knowledge, no existing court orders. We therefore conclude that the Defendant Class Representatives are not adequate representatives of the State Defendant Class.

B. Typicality

We also conclude that there is insufficient evidence that the Defendant Class Representatives' defenses are typical of those at the disposal of other members of the State Defendant Class. *See* *In re IPO*, 471 F.3d at 41 ("[T]he district judge must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met."). The district court found that the typicality requirement was satisfied because the members of the State Defendant Class are

---

[12] See, supra, note 2.

all "charged with enforcing or uniformly acting in accordance with a state statute, or common rule or practice of state-wide application, which is alleged to be unconstitutional."  Brown v. Kelly, 244 F.R.D. at 240 (internal quotation marks omitted).  In the circumstances of this case, where we declared the statute at issue unconstitutional many years ago and where the plaintiffs seek relief that would require positive action by the State Defendant Class, the facts before the district court were insufficient to support a finding of typicality.

Prosecutors and law enforcement agencies throughout New York State have discretion over whether to enforce applicable statutes.  See People v. Zimmer, 51 N.Y.2d 390, 394 (1980) (describing the scope of prosecutorial discretion).  Here, it is uncontested that arrests and prosecutions under section 240.35(1) continued in New York City after Loper, persisting even after the district court's 2005 order directing the City Defendants to cease and desist enforcement.  See Brown v. Kelly, 2007 WL 1573957, at *1-*2, 2007 U.S. Dist. LEXIS 39527, at *1-*2; see also Casale v. Kelly, --- F. Supp. 2d ---, Nos. 08 Civ. 2173, 05 Civ. 5442, 2010 WL 1685582, at *6, 2010 U.S. Dist. LEXIS 40606, at *27 (S.D.N.Y. Apr. 26, 2010).  By contrast, there was no evidence before the district court of which we are aware that the other State Defendant Class members had enforced the statute post-Loper in substantial numbers or in any consistent manner.

29

The only evidence relied upon by the district court in this regard was OCA data that since 1992 there had been at least 673 criminal prosecutions by district attorney's offices charging violations of section 240.35(1) in Rockland, Suffolk, Erie, and Nassau Counties. This data did not set forth violations by county, however, nor did it address the practices in the more than fifty other counties included in the State Defendant Class. We therefore conclude that the district court was not free to decide, based on the limited information before it, that enforcement or the risk of enforcement of this unconstitutional statute was a statewide phenomenon.[13]

The lack of a statewide practice of enforcement would be fatal to a finding of typicality under the circumstances of this case. The central issues facing the State Defendant Class are whether enforcement has persisted and what the scope of injunctive relief, if any, should be.[14] Because it is

_____

[13] Indeed, _amicus_ briefs submitted to this Court on appeal indicate that some class defendants dispute that they have consistently enforced the statute after _Loper_. For example, Nassau County asserts that according to its data, it has utilized the statute on only three occasions in the past ten years, involving a total of six arrests. Its most recent instance of enforcement was in October 2001, and the reference to section 240.35(1) in that instance appears to have been a typographical error. New York State alleges that its State police officers have made only twenty arrests pursuant to section 240.35(1) between 1992 and March 2007.

[14] The City Defendants argue that the state class defendants might have a defense that they are not bound by _Loper_'s holding that section 240.35(1) is unconstitutional, which applied

30

uncontested that New York City continued regular enforcement of section 240.35(1) even in the face of court orders, its possible defenses to the injunctive relief sought by Brown are more limited than the defenses that other defendants might have. Indeed, the scope of injunctive relief appropriate against State Class Defendants who have not enforced the statute, or who have done so only rarely, would likely be different from the scope of appropriate injunctive relief that could reasonably be imposed against the City Defendants. Under these circumstances, the Defendant Class Representatives' defenses are not typical.[15]

The district court responded to these typicality concerns by requiring that state law-enforcement agencies be put on notice of the class action, and stating that if any wished to

---

directly against the City. Although New York State courts may not be bound by Loper's holding, see Lockhart v. Fretwell, 506 U.S. 364, 376 (1993) (Thomas, J. concurring), the district court is and state actors likely are. And in any event, the opinion issued during the pendency of this appeal by the New York Supreme Court Appellate Term in People v. Hoffstead, --- N.Y.S.2d ---, 2010 WL 2331432, 2010 N.Y. Misc. LEXIS 1572 (N.Y. Sup. App. Term June 10, 2010), now apparently binds the state defendants.

[15] Although the district court observed that "[i]f there are counties in New York State that have never unlawfully enforced section 240.35(1), any remedies imposed on these defendants will do them no harm," Brown v. Kelly, 244 F.R.D. at 241, we find this reasoning unpersuasive. First, the injunctive relief sought by the plaintiffs includes affirmative obligations, thereby imposing burdens on the State Defendant Class. Second, an injunction places the defendants under the contempt power of the court, exposing them to risk of sanction for future violations of the statute. See, e.g., Casale, --- F. Supp. 2d ---, 2010 WL 1685582, 2010 U.S. Dist. LEXIS 40606.

31

oppose a permanent injunction on individualized grounds, they may do so. See Brown v. Kelly, 244 F.R.D. at 241. We think this to be inadequate. The State Defendant Class lacks typicality with respect to the central issues before the district court. The matter before us is therefore unlike instances in which we have permitted class certification with notice when "the presumption of class cohesion falters" in only a "portion[] of the proceedings." Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 166 (2d Cir. 2001). To allow notice to class members to overcome the absence of a Rule 23(a) prerequisite in this case would be to undermine Rule 23's deliberate balance between facilitating class actions and protecting the interests of absent class members.

For the reasons set forth above with respect to the adequacy and typicality requirements of Rule 23(a), we conclude that the district court abused its discretion in certifying the State Defendant Class. We therefore vacate that portion of the district court's order.[16]

### V. Abuse of Discretion in Certifying Rule 23(b)(2) Statewide Plaintiff Class

_____

[16] At oral argument, Brown suggested that he was seeking only an order directing the defendant class to cease enforcement of section 240.35(1). This characterization differs from the relief described in the Amended Complaint and discussed by the district court, and we do not now speculate on how limiting the form of relief might affect the district court's class certification analysis on remand.

Turning to the district court's certification of a State Plaintiff Class, we conclude that because Brown sought certification of such a class only as part of a bilateral action seeking equitable relief against a statewide class of defendants, our rejection of the State Defendant Class is fatal to the certification of the counterpart State Plaintiff Class.

Having rejected the certification of a State Defendant Class, we can certify a State Plaintiff Class only if the named defendants, all of whom are associated with New York City, have acted or refused to act on grounds that apply generally to the State Plaintiff Class, rendering injunctive relief appropriate with respect to that class as a whole. See Fed. R. Civ. P. 23(b)(2). Because the State Plaintiff Class is defined as plaintiffs who have been or will be arrested, charged, or prosecuted anywhere in New York State, this proposed class seems clearly to include members who are not at risk of injury by the City Defendants. Accordingly, injunctive relief against the City Defendants is not appropriate with respect to the statewide class as a whole, and certification under Rule 23(b)(2) is improper. Indeed, both Brown and the district court recognized that the equitable relief sought in this action was possible only with the certification of both a statewide plaintiff and defendant class. See Brown v. Kelly, 244 F.R.D. at 237 (certifying a plaintiff class under Rule 23(b)(2) because "[b]ringing non-City parties

33

into this litigation via bilateral (b)(2) class certification is the only way to achieve uniformity of equitable relief for past enforcement, and to effectively prevent any future enforcement across the state.").

In light of our ruling that the State Defendant Class is an inappropriate defendant class, we conclude that certification of the State Plaintiff Class under Rule 23(b)(2) is also inappropriate.

### VI. Certification of Rule 23(b)(3) City Plaintiff Class

The City Defendants also challenge the district court's certification of a City Plaintiff Class pursuant to Rule 23(b)(3). We conclude that the district court did not abuse its discretion in certifying the City Plaintiff Class.[17]

The City Defendants argue that the City Plaintiff Class does not meet Rule 23(b)(3)'s requirement that "the questions of law or fact common to the class members predominate over any

---

[17] Because the City Defendants' arguments focus on whether the class is maintainable under Rule 23(b)(3), we do not separately discuss the requirements of Rule 23(a). To the extent that the City Defendants contend that Brown failed to establish commonality and typicality under Rule 23(a) because individualized questions will arise, we address these arguments infra in the context of the predominance requirement of Rule 23(b)(3). See In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 136 n.6 (2d Cir. 2001), overruled on other grounds by In re IPO, 471 F.3d 24 (2d Cir. 2006), and superseded by statute on other grounds as stated in Attenborough v. Const. and Gen. Bldg. Laborers' Local 79, 238 F.R.D. 82, 100 (S.D.N.Y. 2006).

34

questions affecting only individual members."  We have said that "[t]he predominance requirement is met if the plaintiff can establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof."  Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 107-08 (2d Cir. 2007) (internal quotation marks omitted, ellipsis in original).  Rule 23(b)(3) "encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  Fed. R. Civ. P. 23(b)(3) adv. comm. n. to 1966 amend.  Although "a defense may arise and may affect different class members differently[, this] does not compel a finding that individual issues predominate over common ones."  In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 138 (2d Cir. 2001) (internal quotation marks omitted), overruled on other grounds by In re IPO, 471 F.3d 24 (2d Cir. 2006), and superseded by statute on other grounds as stated in Attenborough v. Const. and Gen. Bldg. Laborers' Local 79, 238 F.R.D. 82, 100 (S.D.N.Y. 2006).  "As long as a sufficient constellation of common issues binds class members together, variations in the sources and application of a defense will not automatically foreclose class

certification under Rule 23(b)(3)." Id. (internal quotation marks omitted and alterations incorporated).

The City Defendants argue that Rule 23(b)(3) certification is inappropriate because the claims at issue in this case require individualized inquiries to establish liability. We acknowledge that the district court will be required to make individualized inquiries with respect to some of the plaintiffs and some of the claims. We conclude, however, that it was within the district court's discretion to find that common issues predominated.

First, there are several common questions of law and fact that are shared by all of the plaintiffs and are central to the damages action against the City Defendants. They are likely to include: (1) whether New York City has a policy of enforcing section 240.35(1), or whether the City failed to train officers and prosecutors that this statute was unconstitutional; (2) whether the individual defendants are entitled to qualified immunity; (3) whether defendant Kelly had knowledge of the unlawful acts of his subordinates; (4) whether the individual defendants are liable for punitive damages; (5) whether the City Defendants are estopped from arguing that they did not violate a plaintiff's First Amendment rights when they arrested, summonsed, or prosecuted him under section 240.35(1) because the plaintiff was not actually engaged in begging; and (6) whether plaintiffs

36

who were not engaged in begging but who were nonetheless arrested, summonsed, or prosecuted under section 240.35(1) have a colorable claim under the First Amendment because the enforcement of section 240.35(1) deterred their speech. Because these issues are likely to be central to all of the plaintiffs' cases and could be dispositive to the resolution of some claims, the district court did not abuse its discretion in certifying the City Plaintiff Class. See In re Agent Orange Prod. Liab. Litig. MDL No. 381, 818 F.2d 145, 165-67 (2d Cir. 1987) (concluding that class certification of a plaintiff class in a mass tort action was justified under Rule 23(b)(3) because of the "centrality of the [defendants'] military contractor defense," despite "few, if any, [other] common questions of law" and the need for "highly individualistic" inquiries into causation).

Second, the City Plaintiff Class members' claims all arise from the same core allegation: that the City Defendants have continued to enforce section 240.35(1) despite our holding that doing so violates the First Amendment. As we have noted, where plaintiffs were "allegedly aggrieved by a single policy of the defendants," and there is "strong commonality of the violation and the harm," this "is precisely the type of situation for which the class action device is suited." In re Visa Check, 280 F.3d at 146; see also In re Nassau County Strip Search Cases, 461 F.3d at 227 (noting that "because the predominance analysis

37

tests whether the class is a sufficiently cohesive unit, all factual or legal issues that are common to the class inform the analysis" (internal quotation marks and citation omitted)).

The City Defendants argue that the claims in the Complaint -- particularly those for false arrest -- require individualized factual inquiries. With respect to false arrest, they point out that probable cause is an absolute defense, and that it is determined by the existence of probable cause for <u>any</u> crime at the time of the arrest. <u>See</u> <u>Jaegly v. Couch</u>, 439 F.3d 149, 152, 153-54 (2d Cir. 2006). The City Defendants could thus defend an individual plaintiff's false arrest claim by arguing that there was a legitimate reason for it beyond the loitering charge.

Although we recognize that the City Defendants may raise a probable cause defense outside the loitering charge to some of the plaintiffs' claims, the fact that some defendants may have a probable cause defense in some cases does not render certification inappropriate in light of the common central issues in this action.[18] Rule 23(b)(3) requires that common questions predominate, not that the action include only common questions.

---

[18] Further, as Brown points out, the City Defendants' probable cause defense itself raises common legal questions, including whether the issuance of a summons always constitutes a single charge.

38

Nor do we agree with the City Defendants that the district court misapplied In re Nassau County Strip Search Cases, 461 F.3d 219.  There, we decided that a district court had erred in concluding that common issues did not predominate in a case challenging a blanket strip-search policy.  Although some plaintiffs may have been searched based on reasonable suspicion, thereby creating a defense to liability with respect to those plaintiffs, we concluded that "[i]n light of the pervasive character of the common liability issues and the admittedly de minimis nature of individualized liability issues, . . . the District Court erred by holding that individual liability issues predominated over common ones."  Id. at 230.

The City Defendants argue that the district court erroneously relied upon In re Nassau County Strip Search Cases despite the fact that the individualized inquiries that will be required in this case are not de minimis.  But we do not read the district court's opinion to suggest that the City Defendants' probable cause defense affected only a de minimis portion of the plaintiffs.  The court's analysis centered instead on its view that despite the existence of individual issues in this action, the common issues were "so pronounced and pervasive [that] they overwhelmingly outweigh the more narrow inquiries that may be required to resolve a subset of certain Fourth Amendment claims."

39

Brown v. Kelly, 244 F.R.D. at 238. This was not an abuse of discretion.

We think that the City Defendants also overstate the scope of In re Nassau County Strip Search Cases. It does not stand for the proposition that any individualized liability issues must be de minimis in order for Rule 23(b)(3) class certification to be permissible. Rather, we concluded that the district court acted outside of its discretion in denying class certification, in light of the fact that individualized liability issues were de minimis. Because we are "noticeably less deferential when the district court has denied class status than when it has certified a class," In re Nassau County Strip Search Cases, 461 F.3d at 225 (internal quotation marks omitted), the decision does not establish the outer boundaries of the circumstances under which a district court may find that common issues predominate. Indeed, the decision itself proffers a much broader standard for finding predominance: "[A]lthough 'a defense may arise and may affect different class members differently, [this] does not compel a finding that individual issues predominate over common ones.'" Id. (quoting In re Visa Check, 280 F.3d at 138).

With respect to the remaining claims in this action, the amount of individualized inquiry required varies significantly. For example, the Complaint asserts a substantive

due process claim based on the City Defendants' enforcement of an unconstitutional statute against the plaintiffs. Although the City Defendants argue that an individualized inquiry as to whether the actions against each plaintiff "shock the conscience," see Pena v. DePrisco, 432 F.3d 98, 112 (2d Cir. 2005), will be required, the same theory -- that enforcement of a void statute in contravention of court orders shocks the judicial conscience -- is at issue for each plaintiff. Other claims could also potentially require individualized inquiries, but only if the district court agrees with the defendants on common threshold legal questions.

The plaintiffs' malicious prosecution claim is illustrative. The parties dispute whether the plaintiffs who were prosecuted under section 240.35(1) must establish that the proceedings against them were terminated in their favor -- a traditional element of a malicious prosecution claim -- in light of the fact that the statute had already been declared void at the time of prosecution. Cf. Singleton v. City of N.Y., 632 F.2d 185, 193 (2d Cir. 1980) (holding that proceedings are "terminated in favor of the accused" for the purpose of a malicious prosecution claim only if their final disposition is such as to indicate the accused is not guilty) (internal quotation marks omitted). If the district court agrees with the plaintiffs that prosecution under section 240.35(1) was necessarily "malicious"

41

because the statute had already been declared void, and therefore that each plaintiff need not demonstrate that the proceedings were terminated in his or her favor, then every plaintiff who was prosecuted under section 240.35(1) would have essentially the same malicious prosecution claim. Even if the district court ultimately agrees with the defendants that the plaintiffs must still establish termination in their favor, however, this threshold legal question is itself a common preliminary issue.

Similarly, although the defendants argue that the district court must determine whether the plaintiffs were actually engaged in begging before finding that the enforcement of section 240.35(1) constituted a First Amendment violation, the district court must first decide (1) whether the defendants are estopped from making such an argument in light of the fact that they charged the plaintiffs with the crime of begging, and (2) whether the plaintiffs' alternative First Amendment theory based on the deterrent effect of an arrest, applicable to all plaintiffs regardless of actual begging, has a legal basis. We conclude that when the claims are considered together, particularly in light of the common factual and legal questions that cut across them, the district court did not abuse its discretion in concluding that common issues predominated.

The district court, of course, possesses tools with which to manage the individualized inquiries that this action may

42

require, including creating subclasses, decertifying the class with respect to claims where individualized inquiries become too burdensome, and holding separate trials for plaintiffs subject to individual defenses that remain after the common questions of law and fact are resolved.  We leave the management of these issues to the sound discretion of the court.

**CONCLUSION**

For the foregoing reasons, we affirm the certification of a Rule 23(b)(3) City Plaintiff Class, but vacate the certification of the Rule 23(b)(2) State Plaintiff and Defendant Classes.  We remand the matter to the district court for further proceedings.